IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| GEORGE BARR, ) | Civil Action No. 3:05-1208-CMC-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| U.S. MARSHALS SERVICE, an agency ) | **REPORT AND RECOMMENDATION** |
| of the United States of America, and the ) | |
| U.S. DEPARTMENT OF JUSTICE, an ) | |
| agency of the United States of America, ) | |
| both by and through the Honorable Alberto ) | |
| Gonzales, Attorney General, and the ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, George Barr ("Barr"), filed this action on April 25, 2005. He alleges wrongful termination and asserts claims for (1) a violation of due process; (2) a violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.; (3) a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.; (4) breach of contract without due process; and (5) application of the Back Pay Act, 5 U.S.C. § 5596. Defendants filed an Answer on July 26, 2005, and a motion to dismiss, or in the alternative, for summary judgment on November 7, 2005. Barr filed his response on December 12, 2005.[1] This case was automatically referred to the undersigned for pretrial purposes pursuant to Local Rule 73.02(B)(2)(g).

---

[1]Defendants argue they are entitled to dismissal or summary judgment on each of Barr's claims. Barr addresses only his due process claim and his Rehabilitation Act claim in his opposition memorandum. He stipulated that his ADEA and contract claims may be dismissed with prejudice and that his Back Pay Act claim may be dismissed without prejudice to allow him to pursue that claim in the U.S. Court of Claims. (Pl. Mem., p. 2, n. 1).

**Background**[2]

The United States Marshals Service (USMS) has the primary responsibility for ensuring the safety of the federal judiciary including judicial officers, court employees, and judicial facilities. The USMS relies on a contract guard force known as Court Security Officers (CSOs) to assist with the protection of federal judicial facilities. CSOs are employees of private security companies under contract to the USMS. The judiciary, through its Court Security appropriation, reimburses the USMS for the cost of CSO services.

Sometime in 1997, the United States Judicial Conference Committee on Security and Facilities addressed concerns that CSOs should be medically and physically fit so that they be able to perform all the duties associated with their position.[3]

---

[2]This section is quoted from Wise v. AKAL Security, Inc., 2005 WL 3487741, *1 (W.D. Tex. 2005).

[3]CSO duties can vary from one district to another. The listing below gives a brief description of duties a CSO is authorized to perform: (1) Entrance Control--Includes operating and enforcing a personnel identification system, operating security screening equipment, checking items such as handbags, packages, baby carriages, wheel chairs, etc., in order to detect hidden weapons or contraband; (2) Roving Patrol--Includes patrolling areas inside and outside court facilities in accordance with the routes and schedules outlined in the district's standard operating procedures; (3) Post Coverage--Includes maintaining stationary and other posts to prevent unauthorized entrance. Includes monitoring closed circuit television, duress alarm systems or other such equipment, courtrooms, judges' chambers, jury rooms, and other court-related offices; (4) Escort Duties--Includes armed escort services for judges, court designated individuals. Also includes escorting judicial personnel from one room to another, one floor to another, or one facility to another, including to a garage or parking area. Assignments may also include escorting judges to a court facility in another city or district.; (5) Law and Order--Includes apprehending and detaining any person attempting to gain unauthorized access to Government property or court proceedings. This requires the CSO to take whatever action is necessary to stop and detain any individuals attempting to commit any acts that imperil the safety and security of government employees, property, and the public. After apprehending an individual suspected of committing a criminal offense, the CSO is required to turn the suspect over to the U.S. marshal, or their designee, for transporting and processing. The CSO is also required to prepare incident reports and to serve as a witness, if necessary; (6) Traffic Control-- Includes directing vehicle and pedestrian traffic and
(continued...)

At some point in 1999, members of the Committee on Security and Facilities decided to implement a medical review system to ensure that CSOs could perform all the demands of their job, to include responding quickly and effectively in any violent disturbances. The Committee retained Richard Miller, M.D.[4] to conduct a study of the CSO position. Dr. Miller interviewed U.S. Marshal employees and personally observed CSOs perform their jobs. The Committee met with Dr. Miller two or three times during the course of his study. Dr. Miller presented his report to the Committee in June 2000, and the Committee accepted the report, concluding that Dr. Miller had satisfactorily determined the essential functions of the CSO position and that the standards he recommended would accurately assess the ability of CSOs to perform those functions. Subsequently, the Committee approved the Office of Federal Occupational Health's implementation of the report and setting up a medical review process.

Barr was one of a number of CSO's terminated based on a medical disqualification. He joined a putative class action, Strolberg v. Akal Security, Inc., #03-0004-S-DOC filed in the District of Idaho. The defendants in this case were also defendants in Strolberg. Eventually all claims, including those of Barr, were dismissed by the Strolberg court. Barr then filed his present action in this court.

---

[3](...continued)
controlling and enforcing parking regulations as described in the district's standard operating procedures; and (7) Lost and Found--Includes receiving found articles and delivering such property into the custody of the proper personnel.

[4]Director of Law Enforcement Medical Programs, United States Public Health Service, Office of Federal Occupational Health.

3

**Discussion**

Defendants argue that Barr's Rehabilitation Act and Due Process claims are precluded by the doctrine of res judicata. Alternatively, defendants argue that the Rehabilitation Act claim is also precluded under the companion doctrine of collateral estoppel.

Since both parties have submitted matters outside the pleadings, the issues raised in the memoranda should be analyzed under Rule 56, rather than Rule 12(b)(6). When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id.

Most of the attachments to the memoranda are documents related to the Strolberg case. Barr did include a "Plaintiff's Statement of Material Facts In Dispute" in his attachments. This statement lists:

> 1. Judge Carter in the Idaho case did not address CSO Barr's Rehabilitation Act claims.
>
> 2. The Federal Defendants have taken the position throughout this case that the DOJ EEO administrative process is not available to Mr. Barr or any other CSO due to the position that they are not employees of the Federal Government.
>
> 3. Whenever CSOs did file for that administrative process, they were given no counseling whatsoever save and except that the process was not available to them.
>
> 4. Upon the withdrawal of the medical certificates of CSO Barr and all other CSOs employed through AKAL, the USMS directed AKAL to affirmatively notify the CSOs that there was no appeal process available to them. (Exhibits 10 and 11 to Affidavit of RCH).
>
> 5. The Office of Federal Contract Compliance Procedures (OFCCP) has conducted an investigation into the processes available to CSOs whose medical certificates were withdrawn and determined that there

     was no Due Process appeal available. (Exhibit 13 to Afidavit of RCH).

6.  The DOJ in its EEO process denying counseling or other procedures to Mr. Barr and the other CSOs, did not address the issue of equitable estoppel. (Exhibit 2 to Affidavit of RCH).

7.  Judge Carter in the Strolbert case did not rule that there could not be an appeal to the district court from the ultimate denial of the DOJ - EEO process. (Defendant's Exhibit 5).

1.  Res Judicata

The defendants have moved for summary judgment as to all causes of action based on the doctrine of res judicata. This doctrine, sometimes referred to as claim preclusion, prohibits the parties or their privies from relitigating issues previously raised and decided, and issues which could have been raised in a prior action. See Cromwell v. County of Sacramento, 94 U.S. 195 (1877), Krener v. Chemical Construction Corp., 456 U.S. 461 (1982). The doctrine promotes public policy in that it minimizes the cost and vexation of multiple law suits, it conserves judicial resources, limits inconsistent decisions by different courts, and encourages finality on adjudication. Allen v. McCurry, 449 U.S. 90 (1980) and Parklane Josiery Co., Inc. v. Shore, 439 U.S. 322 (1979). In order for res judicata to apply to a pending case, the moving party must demonstrate: "(1) a final judgment on the merits in an earlier suit, (2) an identity of causes of action in both the earlier suit and the later suit, and (3) an identity of parties or their privies in the two suits." Keith v. Aldridge, 900 F.2d 736 (4th Cir. 1990), cert. denied 111 S. Ct. 257 (1990).

a.    Rehabilitation Act

Defendants recognize the elements of a res judicata defense stated above. (Def. Mem., p. 11). There is no question that the parties in <u>Strolberg</u> and the present case are identical for res judicata purposes. Further, Barr pressed an identical Rehabilitation Act claim in <u>Strolberg</u>. (Compare Second Amended Complaint in <u>Strolberg</u>, pp. 14-15 with present complaint, pp. 9-10). However, the <u>Strolberg</u> court did not reach a final decision on the merits of Barr's Rehabilitation Act claim because it was dismissed **without** prejudice because Barr (and 14 other plaintiffs in <u>Strolberg</u>) had not initiated an administrative claim or received a right to sue letter. (Def. Mem., Ex. 5, pp. 13-14). Defendant concede this fact (Def. Mem., pp. 7-8). Defendants argue:

> The Fourth Circuit has never directly addressed whether a Title VII claim may be barred by res judicata it at the time of the earlier suit, the plaintiffs have not yet received a right-to-sue letter. However, several of other circuits have answered this question in the affirmative finding Title VII claims are not exempt from the doctrine of res judicata where plaintiffs have neither sought a stay from the district court for the purpose of pursuing Title VII administrative remedies nor attempted to amend their complaint to include their Title VII claims. See <u>Davis v. Dallas Area Rapid Transit</u>, 383 F.3d 309, 315-16 (5th Cir. 2004) (where claims arose from the same nucleus of operative fact as the claims in the first action, Appellants were on notice to include those claims in the first action, and they could have requested a stay until they received their letters to prevent their claims from being precluded by res judicata); <u>Owens v. Kaiser Foundation Health Plan, Inc.</u>, 244 F.3d 708, 714-15 (9th Cir. 2001) (TitleVII claims are barred by the doctrine of res judicata where Appellants neither secured "right to sue letters" prior to filing their first action nor sought a stay from the district court pending their administrative proceedings before the EEOC); <u>Heyliger v. State University and Community College System of Tenn</u>, 126 F.3d 849, 856 (6th Cir.1997) (plaintiff was subject to claim preclusion because he failed to litigate a Title VII claim in a prior state court proceeding); <u>Herrmann v. Cencon Cable Associates, Inc</u>., 999 F.2d 223, 225-26 (7th Cir.1993) ("Parties to Title VII actions enjoy no immunity from res judicata"); <u>Woods v. Dunlop Tire Corp.</u>, 972 F.2d 36,40-41 (2d Cit 1992) (Title VII claim not exempt from its judicata where plaintiff made no effort in prior action to seek a stay from the district court or amend her complaint to include Title VII claim); <u>see</u> <u>also</u> <u>Boateng v. InterAmerican University. Inc.</u>, 210 F.3d 56, 63 (1st Cir.2000) (Title VII

6

> claim subject to res judicata where plaintiff received right to sue letter during pendency of first action); Jang v. United Technologies Corp., 206 F3d 1147,1149(11th Cir.2000) (adopting Title VII analysis and concluding that ADA claim was not exempt from res judicata where plaintiff failed to obtain right to sue letter during pendency of first action); Churchill v. Star Enterprises, 183 F.3d 184, 193-94 (3d Cir. 1999) (same).

The cases cited by defendants are easily distinguishable. None of these cases involve application of the doctrine of res judicata to claims that were previously asserted, but dismissed without prejudice. All involved a previous action that was decided on the merits. For instance, in Owens v. Kaiser foundation Health Plan, Inc., 244 F.3d at 714, plaintiff's prior action was dismissed with prejudice due to a failure to prosecute which constituted a decision on the merits. The undersigned concludes that the doctrine of res judicata does not apply to Barr's Rehabilitation Act claim because the Strolberg court dismissed it without prejudice.

  b. Due Process

Defendants make a similar argument with respect to Barr's Due Process claim. The record shows that Barr and the other Strolberg plaintiffs attempted to amend their Second Amended Complaint to include a Due Process claim.[5] The motion to amend was denied. The Strolberg court held that any due process claim was preempted based on the comprehensive remedial scheme established by the Rehabilitation Act. The court rejected Barr's argument that his proposed Due Process claim was a "stand alone" claim and found the motion to amend the complaint was futile. (Def. Mem., Ex. 5, pp. 6-7). Barr did not appeal the Strolberg court's decision. The

---

[5]The Strolberg court characterized this proposed claim as an allegation that plaintiffs were "terminated based on an incorrect determination of medical qualification, and there should be some process by which they can appeal or present evidence to rebut that determination." (Def. Mem., Ex. 5, p. 6.).

7

defendants now argue that the denial of the motion to amend constitutes an adjudication on the merits of the Due Process claim and that it is, therefore, barred by the doctrine of res judicata.

Defendants cite four Second Circuit cases to support their argument.[6] These cases generally hold that where a motion to amend to assert an additional claim is denied on the merits of that claim, the decision is on the merits for res judicata purposes. On the other hand, these cases hold that where the motion to amend is denied based on plaintiff's undue delay, prejudice based on lack of discovery, or failure to satisfy a condition precedent res judicata might not apply. Barr cites no authority to the contrary. Instead, he appears to argue that the motion to amend was wrongly decided by the Strolberg court and the stand alone Due Process claim should have been allowed. However, Barr elected not to appeal this ruling. Review of the Strolberg court's order clearly shows that the Due Process claim was rejected on the merits and the motion to amend was denied on the basis of futility. (Def. Mem., Ex. 5, pp. 5-7).

2.     Collateral Estoppel

Defendants also argue that Barr's Rehabilitation Act claim is barred under the doctrine of collateral estoppel. Collateral estoppel, or issue preclusion, bars subsequent litigation of legal and factual issues common to an earlier action that were "actually and necessarily determined" in the first litigation. Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); Combs v. Richardson, 838 F.2d 112, 114 (4th Cir.1988). Thus, "[c]ollateral estoppel forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom

---

[6]EFCO Corp. v. U.W. Marx, Inc., 124 F.3d 394 (2nd Cir. 1997); Flaherty v. Lang, 199 F.3d 607 (2nd Cir. 1999); Northern Assur. Co. of America v. Square D Co, 201 F.3d 84 (2000); and Legnani v. Alitalia Linee Aeree Italiane, P.A., 400 F.3d 139 (2nd Cir. 2005).

[collateral estoppel] is asserted had a full and fair opportunity to litigate." Sedlack v. Braswell Servs. Group, Inc., 134 F.3d 219, 224 (4th Cir.1998) (internal quotation marks omitted). To apply collateral estoppel or issue preclusion to an issue or fact, the proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.  *See id.*

Defendants argue that they are entitled to summary judgment with respect to Barr's Rehabilitation Act claim under the doctrine of collateral estoppel because the Strolberg court "held that Barr failed to exhaust his administrative remedies in a timely manner and rejected his equitable tolling and futility arguments." (Def. Mem., p. 19).  The undersigned disagrees.  While this court is bound to accept several of the Strolberg court's findings, i.e., Barr did not file his EEOC complaint within 45 days as required by 29 C.F.R. § 1415.105 and he was not allowed to "piggyback" on the timely filed administrative complaints of other Strolberg plaintiffs, that does not end the inquiry. Foster v. United States Marshals Services, 2005 WL 3742804, *6 (N.D.Tex. 2005). At the time Barr's claims were dismissed by the Strolberg court, he had not sought an extension to file an administrative claim from the EEOC or the USMS.  The record shows that after dismissal, Barr filed his administrative claim with USMS.  The agency issued a "right to sue" letter on January 28, 2005, which rejected Barr's equitable tolling argument. (Huntly Aff., Ex. 2, pp. 3-4).  The agency finding is not determinative.  Barr should be allowed the opportunity to make his equitable tolling argument in this court.  See Lloyd v. United States Marshals Service, 2006 WL 367867, *6

9

(holding Strolberg plaintiff in situation identical to Barr was entitled to equitable tolling on Rehabilitation Act claim).

## **Conclusion**

Based on a review of the record, it is recommended that:

1. Plaintiff's ADEA claim and contract claims be dismissed with prejudice;

2. Plaintiff's Back Pay Act claim be dismissed without prejudice;

3. Defendants' motion for summary judgment be granted as to plaintiff's Due Process claim; and

4. Defendants' motion for summary judgment be denied as to plaintiff's Rehabilitation Act claim.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

July 11, 2006
Columbia, South Carolina