IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| George Barr, | ) | C/A NO. 3:05-1208-CMC-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION and ORDER** |
| v. | ) | |
| | ) | |
| United States Marshals Service, an agency | ) | |
| of the United States of America, and | ) | |
| United States Department of Justice, an | ) | |
| agency of the United States of America, | ) | |
| both by and through the Honorable | ) | |
| Alberto Gonzales, Attorney General; and | ) | |
| the United States of America, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on Defendants' motion to dismiss or for summary judgment, and Plaintiff's motion to renew his due process violation claim. Plaintiff's complaint alleges a violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (hereinafter "Rehabilitation Act").[1] Plaintiff argues that his due process violation claim should be reinstated, and that Defendants should be estopped from asserting an untimeliness defense relating to his seeking administrative review or, in the alternative, that equitable tolling should be applied to his Rehabilitation Act claim.    In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(g), DSC, this matter was referred to United States Magistrate Judge Joseph R. McCrorey for pre-trial proceedings and a Report and Recommendation (Report). On July 17, 2007, the Magistrate Judge issued a Report recommending that Defendants' motion to dismiss be granted and that

---

[1] Plaintiff's other claims were dismissed by this court on August 24, 2006. *See* Order (Dkt. # 15, filed Aug. 24, 2006).

1

Plaintiff's motion to renew his due process claim be denied under the doctrine of *res judicata*. Plaintiff filed objections to the Report on July 30, 2007, challenging both of the Report's recommendations.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). After reviewing the record of this matter, the applicable law, the Report and Recommendation of the Magistrate Judge, and Plaintiff's objections, the court agrees with the conclusions of the Magistrate Judge on both issues. Therefore, the court adopts the Report of the Magistrate Judge, as elaborated upon below. Defendants' motion to dismiss or for summary judgment (which this court considers as a motion for summary judgment) is **granted** and Plaintiff's motion to renew his due process violation claim is **denied**.

**Standard**

The court has reviewed the motions and filings of the parties and construes the Defendants' current dispositive motion as one for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that

there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

**Facts**

The United States Marshals Service (USMS), an agency of the United States Department of Justice, is responsible for ensuring the safety of the federal judiciary, including judicial officers, court employees, and judicial facilities. The USMS contracts with several different private companies to provide security in judicial facilities. As is relevant to this matter, individuals employed under these contracts are known as Court Security Officers (CSOs). Prior to August 18, 2003, Plaintiff was a CSO employed in the District of South Carolina. Barr's direct employer, AKAL Security, Inc. (AKAL), is one of the entities with which the USMS contracts to provide

CSOs. For purposes of this litigation, Plaintiff is deemed to be a federal employee. See *infra*, "**Strolberg Litigation**."

By letter dated August 15, 2003, Barr was terminated from his employment with AKAL effective August 18, 2003, based upon the USMS determination that Barr was not medically qualified to perform the essential functions of his job. Barr was affirmatively notified by AKAL that "you have been medically disqualified from the position of Court Security Officer. . . . [T]he decision by the U.S. Marshals Service to medically disqualify you from the position of Court Security Officer is no longer appealable." Pl.'s Mem. in Opp'n to Defs' Second Mot., Dkt. # 28-3 at 11 (filed Mar. 27, 2007).

The language in the termination letter – that the USMS decision was "no longer appealable" – comes from a letter issued in July 2002 by the USMS to its contractors, indicating that no right of appeal existed when the USMS determined a CSO to be medically disqualified from holding his position as a CSO. *See* Pl.'s Br. in Opp'n, Dkt. #10-4 at 15 (filed Dec. 12, 2005). Defendants contend that this "no appeal" language applies to contract provisions between the USMS and its contractors. However, Defendants provide no evidence to support this assertion. Barr contends that this language was included in the letter so that he (and other CSOs terminated due to medical disqualification) would believe he had no right to contest the USMS action.

### The *Strolberg* Litigation

On October 24, 2003, Barr joined as a named plaintiff a putative class action which had been filed in the District of Idaho, *Strolberg, et al. v. AKAL Security, Inc., et al.*, Case No. 03-0004-S-DOC (D. Idaho 2004). This suit had been filed on behalf of as many as 4,500 CSOs nationwide and alleged that the defendants (including the Defendants before this court)

4

discriminated against the complaining CSOs as a class in violation of the Rehabilitation Act, Age Discrimination in Employment Act (ADEA), and the American with Disabilities Act (ADA).

Judge David Carter presided over the litigation and twice denied the *Strolberg* plaintiffs' motions for class certification. *See* Attachment 6 to Defs' Mot. to Dism., Dkt. # 7-6 at 7 (docket entry number 92), 10 (docket entry number 125) (filed Nov. 11, 2005). On January 19, 2005, Judge Carter dismissed with prejudice all ADEA causes of action against defendants, and denied as futile plaintiffs' motion to amend the second amended complaint to add a due process claim. Judge Carter found that because the plaintiffs were, for purposes of the litigation, federal employees, any due process claim they were attempting to assert was preempted by the process provided by the Rehabilitation Act. *See* Attachment 9 to Defs' Mot. to Dism., Dkt. # 7-9 (Carter Order) at 4-7 (filed Nov. 11, 2005).

Judge Carter then dismissed without prejudice the Rehabilitation Act claims of Barr and fourteen other *Strolberg* plaintiffs, finding that these plaintiffs' claims were premature because they had not exhausted their administrative remedies.[2] Carter Order at 14-16. Judge Carter then granted summary judgment for defendants as to the remaining named plaintiffs.

The *Strolberg* plaintiffs against whom summary judgment had been entered then appealed to the Ninth Circuit Court of Appeals. Barr and the other plaintiffs whose Rehabilitation Act claims had been dismissed without prejudice did not join that appeal. The Ninth Circuit found Judge

---

[2]Judge Carter rejected these plaintiffs' argument that equitable tolling should excuse them from exhausting their administrative remedies. *See* Carter Order at 14-15. This argument was presented to Judge Carter in the context of seeking to excuse *altogether* these plaintiffs' failure to exhaust administrative remedies. While this court reaches the same ultimate conclusion as Judge Carter, the court finds that Judge Carter's ruling was made in a posture and context different than this action and, therefore, is not preclusive of Barr's assertion of equitable tolling in this action.

5

Carter's ruling on the futility of an amendment to add a due process claim to be in error, and reversed on this point. *See Strolberg v. Akal Sec., Inc.*, 210 Fed. Appx. 683 (9th Cir. 2006).

**Administrative Review**

On August 23, 2004, a year after he had been terminated and ten months after he had retained counsel, Barr initiated a counseling session with the USMS Equal Employment Opportunity (EEO) office. On October 1, 2004, Barr received notice of his right to file a discrimination complaint. On October 13, 2004, Barr filed a formal complaint of discrimination with the USMS EEO office. On January 28, 2005, shortly after Judge Carter issued his order finding CSOs to be federal employees, the USMS EEO office rejected Barr's discrimination complaint for lack of standing (finding that he was not a federal employee) and for untimeliness. Barr then timely initiated suit in this court.

**Rehabilitation Act Claim**

On August 24, 2006, this court denied Defendants' initial motion to dismiss Barr's Rehabilitation Act claim. Defendants have once again moved for dismissal, arguing that Barr's failure to timely pursue his administrative remedies serves as either a jurisdictional or prudential bar to this suit.

The Rehabilitation Act expressly incorporates the "remedies, procedures and rights" of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16. *See* 29 U.S.C. § 794(a)(1). Among the incorporated remedies and procedures is the requirement that an aggrieved employee exhaust his available administrative remedies prior to filing suit in federal court. Timely invocation of this administrative review process is a prerequisite to seeking a judicial remedy. 29 U.S.C. § 749(a)(1). To initiate this administrative review process, an aggrieved individual must contact an EEO counselor within the employing agency within forty-five days of the alleged discriminatory act. 29

C.F.R. § 1614.105(a)(1). If the complainant's situation is not resolved during EEO counseling, the agency will issue a notice of right to file a formal complaint with the agency. 29 C.F.R. § 1614.106(b). The complainant must file this complaint within fifteen days of the agency's issuance of the notice. *Id.* The agency then considers the complaint, and once an agency issues its final decision on this complaint, an aggrieved party may, *inter alia*, file suit in federal court. 29 C.F.R. § 1614.110(b).

A total failure to comply with the available administrative remedies serves as a jurisdictional bar to a suit in this court; however, failure to *timely* comply with the available administrative remedies requires a separate analysis of whether equitable estoppel or tolling should excuse Plaintiff's failure, as discrimination suits against the government are subject to equitable tolling principles. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 111 (1990). Generally, when an employee fails to timely submit his administrative complaint, the failure is forgiven only if (1) the government should be equitably estopped from asserting the time bar, (2) the time for filing should be equitably tolled, or (3) plaintiff did not know about the time requirement. *Nealon v. Stone*, 958 F.2d 584, 589 (4th Cir. 1992).

Application of these principles to the present case is complicated by Plaintiff's blending of arguments relating to equitable tolling and equitable estoppel. "[T]he doctrines of equitable tolling and equitable estoppel have a common origin; they are based primarily on the view that a defendant should not be permitted to escape liability by engaging in conduct that prevents the plaintiff from filing his or her claim on time." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987). "The common element to both doctrines is some form of misconduct by the defendant." *Lekas v. United Airlines, Inc.*, 282 F.3d 296, 301 (4th Cir. 2002). The two doctrines are, however,

distinguished by specific nature of the misconduct.

### *Equitable Tolling*

Equitable tolling applies "where the defendant has wrongfully deceived or misled the plaintiff *in order to conceal the existence of a cause of action.*" *English*, 828 F.2d at 1049 (citations omitted) (emphasis added). Therefore, "[t]o invoke equitable tolling, the plaintiff must [ ] show that the defendant attempted to mislead [him] and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." *Id.* (citation omitted).

Plaintiff asserts that Defendants' "misconduct" is found in the affirmative act of AKAL's August 15, 2003, letter. Even assuming this letter would serve as a qualifying affirmative act of misconduct on behalf of Defendants, Plaintiff's argument fails. Plaintiff was represented by counsel no later than October 24, 2003, when he joined the *Strolberg* suit. "Retaining an attorney extinguishes the equitable reasons for tolling the . . . period." *Morse v. Daily Press, Inc.*, 826 F.2d 1351, 1353 (4th Cir. 1987) (citing *Edwards v. Kaiser Aluminum*, 515 F.2d 1195 (5th Cir.1975)).[3] Plaintiff's equitable tolling argument is, therefore, rejected.

Additionally, Plaintiff cannot show his reliance on the August 15, 2003 letter was reasonable, as "reliance upon statements or actions *contrary to law* is not reasonable." *Volvo Trucks of N.A., Inc. v. United States*, 367 F.3d 204, 211 (4th Cir. 2004). Plaintiff relies heavily upon his assertion that he believed he had no "appeal" recourse once the USMS determined him medically disqualified to maintain his CSO position. However, the question for tolling purposes is whether Plaintiff was

---

[3]The *Morse* case was an equitable estoppel case. "There is no reason in principle why the effect of retaining an attorney in equitable estoppel cases should be any different from the effect of doing so in equitable tolling cases." *Plowman v. Cheney*, 714 F. Supp. 196, 201 n.11 (E.D. Va. 1989).

misled as to the existence of available administrative remedies if he believed he had been discriminated against in violation of the Rehabilitation Act. It may have been that no avenue existed to challenge the processes or conclusions of the government physicians charged with the penultimate decision of whether a CSO was medically qualified to keep his job as a CSO. However, this is a different inquiry than whether or not Barr believed he had no recourse *at all* if he believed he had been discriminated against on the basis or a perceived or actual disability. Barr submits no evidence that would lead this court to conclude that Defendants' affirmative act (assuming the August 15, 2003 letter qualifies as such) led him to believe he had no recourse. Additionally, Barr does not contend that he was unaware of the deadlines for pursuing administrative remedies with either the Equal Employment Opportunity Commission (EEOC) (if he believed he was an employee of a private employer) or the USMS EEO office (if he believed he was a federal employee). *Cf. Pollack v. Chertoff*, 361 F. Supp. 2d 126, 132 (W.D.N.Y. 2005). Plaintiff's counsel argues in Plaintiff's Objections that "[w]hen the undersigned first undertook some of these cases, we did make filings with the EEOC and were promptly . . . advised that our filings were being rejected because the EEOC had absolutely no jurisdiction over federal employees . . . ." Pl.'s Obj. to Report at 1-2 (Dkt. # 38, filed July 30, 2007). Barr does not, however, provide any competent summary judgment evidence that *he* ever undertook any such filing with the EEOC.

### *Equitable Estoppel*

By contrast, "equitable estoppel applies where, *despite the plaintiff's knowledge of the facts*, the defendant engages in intentional misconduct to *cause the plaintiff to miss the filing deadline*." *English*, 828 F.2d at 1049 (citations omitted) (emphasis added). To establish equitable estoppel, Plaintiff must establish "affirmative misconduct on the part of the government." *Olson v. Mobil Oil*

9

*Corp.*, 904 F.2d 198, 201 (4th Cir. 1990). Such misconduct usually exists "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, *supra*, 498 U.S. at 96. However, equitable estoppel against the government is strongly disfavored. *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422-23 (1990) ("leav[ing] for another day whether an estoppel claim could ever succeed against the Government," but observing that "we have reversed every finding of estoppel [against the Government] that we have reviewed.").

Plaintiff presents no evidence that despite knowledge of his statutory rights, his forbearance in contacting an EEO counselor was induced by any promise of redress or compensation made by Defendants. Indeed, to make this argument would be inconsistent with Barr's assertion that he was relying on the language in the AKAL letter. Therefore, Plaintiff's claim of equitable estoppel also fails.[4]

**Due Process Claim**

Initially, the court notes that Defendants' motion for summary judgment as to Barr's due process claim was granted by order filed August 24, 2006 (Dkt. # 15). This order is one for partial summary judgment, and is, therefore, interlocutory. *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003). A district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment."); *cf.* Fed. R. Civ. P. 54(b) (providing that interlocutory orders that resolve

---

[4] As for Plaintiff's futility argument, such an argument has been discounted in the context of discrimination complaints. *See Murphy v. West*, 945 F.Supp. 874, 876 (D. Md. 1996), *aff'd*, 172 F.3d 863 (Table) (4th Cir.1999).

fewer than all claims are "subject to revision at any time before the entry of [final] judgment"). This power of reconsideration is committed to the discretion of the district court. *See Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge").

If the motion for reinstatement is treated as one for reconsideration, Barr makes no showing that there has been a change in the law controlling this court's August 24, 2006 decision, or that this court committed a clear error of law. Therefore, to the extent this motion for reinstatement is one for reconsideration, it is denied.

Plaintiff's motion also fails because he did not join the *Strolberg* appeal in the Ninth Circuit Court of Appeals. Barr was a party aggrieved by Judge Carter's January 19, 2005 ruling. Therefore, he was a proper party to the appeal. *Ridpath v. Board of Governors Marshall University*, 447 F.3d 292, 305 (4th Cir. 2006). His failure to join the appeal of the other *Strolberg* plaintiffs precludes his reasserting the due process claim in this court.

**Conclusion**

Therefore, for the reasons stated in Magistrate Judge McCrorey's Report and Recommendation, as elaborated upon above, Defendants' motion for summary judgment is **granted** and Plaintiff's motion to reinstate his due process claim is **denied.** The Clerk shall enter judgment in accordance with the court's August 24, 2006 order and this ruling.

**IT IS SO ORDERED.**

                s/ Cameron McGowan Currie
                CAMERON McGOWAN CURRIE
                UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 4, 2007

11

C:\Documents and Settings\Glp59\Local Settings\Temp\notesE1EF34\05-1208 Barr v. USM e adopt rr deny equitable tolling estoppel dism case.wpd